United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMITRY KIREEV,<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY, *et al.*,<br>Respondents. | Case No. 1:26-cv-08152 (EJD)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. Nos. 1, 2 |

Petitioner Dmitry Kireev filed an Amended Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order seeking release from the custody of ICE. *See* Dkt. No. 10; Dkt. No. 2. For the reasons that follow, the Petition is granted in part, and Respondents are ordered to provide Petitioner with a bond hearing.

## I. BACKGROUND

Petitioner entered the United States through the San Ysidro Port of Entry in January 2023, was briefly detained by U.S. Customs and Border Patrol, and was then "paroled into the United States[.]" *Id.* at 1–2; Dkt. No. 9-1 at 2; Dkt. No. 10-1 at 9. Thereafter, Petitioner applied for asylum and began living in Florida. Dkt. No. 10-1 at 5. He is in a committed relationship with a United States citizen and, prior to his detention, worked several jobs pursuant to a valid work authorization issued by USCIS. *Id.*

On June 28, 2026, Petitioner was arrested for resisting arrest without violence and battery. Dkt. No. 13-1 at 2–3. The battery charge was dropped in September 2026, and the resisting arrest without violence charge remains pending. *See* Dkt. No. 9-2 at 5–6; Dkt. No. 10-1 at 17. Petitioner was arrested by ICE following his release from county jail on June 29, 2026. *See* Dkt. No. 10 at 9. Several hours after Petitioner's transfer to ICE custody, he was served with an administrative

warrant for his arrest and a Notice of Custody Determination, which was issued pursuant to 8 U.S.C. § 1226(a). Dkt. No. 10-1 at 6, 11. Petitioner has now been detained for over four months and has not been provided a bond hearing as Respondents maintain that his detention is mandatory under 8 U.S.C. § 1225(b)(2). *See* Dkt. No. 13 at 3.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner alleges that his detention is unlawful for three reasons: (1) his mandatory detention under 8 U.S.C. § 1225(b)(2) violates the Immigration and Nationality Act; (2) his warrantless arrest violated 8 U.S.C. § 1226(a) and its implementing regulations; and (3) his re-detention following his release on parole violated his Fifth Amendment Right to due process. *See* Dkt. No. 10 at 19–20. Respondents oppose relief, arguing that immigration authorities were not required to obtain a warrant at the outset of Petitioner's arrest as his initial detention was controlled by 8 U.S.C. § 1226(c)(1)(E). Dkt. No. 13 at 2. They further argue that Petitioner's continued detention is mandatory under 8 U.S.C. § 1225(b)(2) following the dismissal of his battery charge. *Id.* at 3.

Section 1226(c)(1)(E) requires the Government to detain certain noncitizens "charged

with, [] arrested for, [] convicted of, admits having committed, or admits committing acts which constitute … any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii). However, "courts have construed [§ 1226(c)(1)(E)] to mandate detention only when, for example, an individual is *currently* arrested for, charged with, or convicted of a qualifying offense[]" because the "subsection's clauses' successive use of the present tense track the progression of a criminal case." *Aguillares v. Chestnut*, No. 1:26-CV-04234-DJC-JDP, 2026 WL 2455215, at *2 (E.D. Cal. Aug. 21, 2026) (collecting cases); *see also Singh v. Wofford*, No. 1:26-CV-01161-KES-EPG (HC), 2026 WL 972547, at *2 (E.D. Cal. Apr. 10, 2026) (finding § 1226(c)(1)(E) inapplicable where noncitizen was arrested for, but never charged with qualifying offenses). In other words, "based on the recurring use of the present tense for each stage of the criminal process, the statute no longer requires mandatory detention when charges are resolved via acquittal or dismissal and none of the other clauses apply." *Colli-Briceno v. Rivas*, No. CV-26-02284-PHX-DWL (CDB), 2026 WL 2191447, at *3 (D. Ariz. July 29, 2026) (quoting *Helbrum v. Williams Olson*, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025)).

Here, § 1226(c)(1)(E) applied to Petitioner when he was arrested by ICE in June 2026 because he was, at the time, charged with battery. Accordingly, Respondents were not required to follow § 1226(a) procedures—including obtaining a warrant—at least until Petitioner's battery charge was dropped in September 2026.

Though this disposes of Petitioner's warrantless arrest claim, it does not end the due process inquiry. As Respondents appear to concede, § 1226(c)(1)(E) no longer mandates Petitioner's detention. *See* Dkt. No. 13 at 3. Instead, Respondents contend that Petitioner's continued detention is mandatory under § 1225(b)(2). *Id.* ("Here, custody began under § 1226(c) … and now proceeds under § 1225(b)"). The Court disagrees.

"[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their

United States District Court
Eastern District of California

release." *Calderon v. Kaiser*, No. 25-CV-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Accordingly, Courts have found that noncitizens in removal proceedings who have previously been released by immigration authorities—as Petitioner was here—obtain a protected liberty interest in their continued freedom. *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *R.A.N.O. v. Wofford,* 820 F. Supp. 3d 1094, 1102–03 (E.D. Cal. 2026) (holding that noncitizen had a protected liberty interest following his grant of humanitarian parole). Regardless of whether § 1225(b)(2) or § 1226(a) controls Petitioner's detention, this liberty interest is still protected by the due process clause. *See Padilla v. United States Immigr. & Customs Enf't*, No. 24-2801, 2026 WL 2822044, at *19 (9th Cir. Sept. 21, 2026) ("Noncitizens who arrive illegally and are found away from the border well after arrival are protected from arbitrary detention in violation of the Due Process Claus.").

Because Petitioner has a liberty interest, and may not be mandatorily detained under § 1226(C)(1)(E), he is entitled to process commensurate with that interest. Courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, Petitioner has a substantial private interest in remaining out of immigration custody because he was been released pending civil removal proceedings for nearly three years. During those years he developed ties in his community, applied for asylum, and lived at liberty with his partner.

Turning to the second factor, there is a risk of erroneous deprivation because Petitioner has not been given a hearing. However, the record shows that Petitioner's re-detention may have been justified at the time of his arrest because he was still "charged" with battery at the time. The relevant question is whether his continued detention remains necessary now that this charge has been dropped. Thus, post-deprivation process is required here.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d at 970; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. Providing Petitioner with a post-deprivation hearing here would impose a minimal burden on the Government relative to the due process concerns.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED in part. IT IS HEREBY ORDERED that Petitioner SHALL be provided a *substantive* bond hearing within fourteen (14) days at which an Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if he is released. The hearing may be continued upon Petitioner's request. At any such hearing, the Government SHALL bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. Petitioner SHALL be allowed to have counsel present. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: October 30, 2026

EDWARD J. DAVILA
United States District Judge